UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593

July 22, 2020

LETTER TO COUNSEL:

    RE: *Ladonna S. v. Andrew M. Saul, Commissioner of Social Security*[1]
          Civil No. TJS-19-1100

Dear Counsel:

    On April 12, 2019, Plaintiff Ladonna S.[2] petitioned this Court to review the Social Security Administration's final decision to deny her claim for disability insurance benefits ("DIB"). (ECF No. 1.) The parties have filed cross-motions for summary judgment. (ECF Nos. 15 & 16.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[3] Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

    In her application for DIB, Ladonna S. alleged a disability onset date of July 2, 2010. (Tr. 15.) Her applications were denied initially and on reconsideration. (Tr. 150-53, 155-56.) A hearing was held before an Administrative Law Judge ("ALJ") on December 4, 2014, (Tr. 34-67), and the ALJ found that Ladonna S. was not disabled under the Social Security Act (Tr. 124-41). The Appeals Council remanded the application to the ALJ. (Tr. 142-46.) The ALJ held another hearing on November 3, 2017, and issued a decision dated January 31, 2018, denying Plaintiff's application and finding that she was not disabled under the Social Security Act. (Tr. 12-33.) The Appeals Council denied Plaintiff's request for further review, making the January 31, 2018, decision the final, reviewable decision of the agency. (Tr. 1-6.)

    The ALJ evaluated Ladonna S.'s claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Ladonna S.

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. He is, therefore, substituted as Defendant in this matter. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

[2] On October 10, 2018, the Court's bench adopted a local practice of using the first name and last initial of non-government parties in Court-issued opinions in Social Security cases. This practice is designed to shield the sensitive personal information of Social Security claimants from public disclosure.

[3] This case was originally assigned to Judge Stephanie A. Gallagher. On November 18, 2019, it was reassigned to Magistrate Judge Deborah L. Boardman. On April 10, 2020, it was reassigned to me.

did not engage in substantial gainful activity during the period from her alleged onset date of July 2, 2010, through her date last insured of December 31, 2015. (Tr. 17.) At step two, the ALJ found that Ladonna S. suffered from the following severe impairments: right shoulder rotator cuff tear, adhesive capsulitis of the right shoulder, mild degenerative arthritis, and very mild cervical spine spondylosis. (Tr. 18.)

At step three, the ALJ found Ladonna S.'s impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). (Tr. 19.) The ALJ determined that Ladonna S. retained the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except: occasional pushing and pulling with right upper extremity; no ladders, ropes and scaffolds; occasional crawling; no reaching overhead bilaterally and frequent reaching in other directions with right upper extremity; and no exposure to vibration.

(Tr. 20.)

At step four, the ALJ determined that Ladonna S. was capable of performing past relevant work as a cashier and retail service clerk. (Tr. 26.) Accordingly, the ALJ concluded that she was not disabled under the Social Security Act. (Tr. 27.)

Ladonna S. presents two arguments in this appeal: (1) the ALJ mischaracterized the vocational expert's ("VE") testimony regarding the claimant's ability to perform past relevant work; and (2) the ALJ failed to properly consider the claimant's non-severe impairments in assessing her RFC. (ECF No. 15-1 at 9.) The Court rejects both arguments.

At step four, the ALJ determined that Ladonna S. was capable of performing past relevant work as a cashier and retail service clerk. (Tr. 27.) Ladonna S. does not dispute that these jobs qualify as past relevant work. Instead, she argues that the ALJ improperly relied on the VE's testimony to support the finding that Ladonna S. is capable of performing these jobs in light of her RFC. Specifically, Ladonna S. argues that "the VE was never specifically asked a hypothetical question that included all of the limitations found in the ALJ's residual functional capacity finding." (ECF No. 15-1 at 7.) The thrust of her argument is that if the ALJ never asked the VE whether a person with Ladonna S.'s RFC could perform work as a cashier and retail service clerk, then the VE's testimony would not be evidence that Ladonna S. could perform such work.

Ladonna S.'s argument fails because the ALJ did ask the VE whether a person with Ladonna S.'s RFC could perform work as a cashier and retail service clerk. The ALJ posed a series of hypothetical questions to the VE during the hearing. The ALJ first asked the VE to "assume a hypothetic[al] individual that is vocationally situated as is the claimant" with the ability to perform "all functions of medium work except occasional pushing and pulling with the right upper extremity and frequent reaching with the right upper extremity." In response to the ALJ's questions, the VE stated that such an individual would be able to perform "work as the Cashier, Retail Services Clerk, Jewelry Sales, the Activity Director," and that "Bus Driver is the only position that could not be performed." (Tr. 95.) The VE's response to this hypothetical cannot

serve as a valid basis for the ALJ's determination that Ladonna S. can perform her past relevant work as a cashier and retail service clerk because Ladonna S. has a more restrictive RFC than the individual in the hypothetical.

The ALJ's second hypothetical question asked the VE to assume an individual with the following limitations:

> assume the same limitations from the first hypothetical except in addition, occasional ladders, ropes, and scaffolds. Frequent crawling and there should be no reaching overhead with the right upper extremity, and frequent reaching in other directions with the right upper extremity, and with occasional exposure to vibration.

(Tr. 96-97.) In response to this hypothetical, the VE stated that such an individual would be able to perform Ladonna S.'s past work as a cashier and retail service clerk. (Tr. 97.) Again, the VE's response to this hypothetical cannot serve as a valid basis for the ALJ's determination that Ladonna S. can perform her past relevant work as a cashier and retail service clerk because Ladonna S. has a more restrictive RFC than the individual in the hypothetical.

The ALJ posed a third hypothetical to the VE. For this hypothetical, the ALJ asked the VE to assume an individual with the following limitations:

> assume that the hypothetical individual is now limited to work at a light exertional level with the same non-exertional limitations from the second hypothetical, except now there should be no ladders, ropes, or scaffolds, and occasional kneeling and crawling, and no reaching overhead bilaterally, and no exposure to vibration.

(Tr. 97-98.) In response to this hypothetical, the VE testified that the individual would be able to perform Ladonna S.'s past relevant work. (Tr. 98.) This hypothetical matched each of the limitations of the ALJ's RFC determination for Ladonna S. By phrasing the hypothetical such that the VE was to assume that the "hypothetical individual is *now* limited to work at a light exertional level with the same non-exertional limitations from the second hypothetical," (Tr. 97) (emphasis added), the ALJ incorporated the second hypothetical's limitations into the third hypothetical. Ladonna S.'s argument to the contrary is without merit. (ECF No. 15-1 at 8) ("The ALJ failed to specify whether the hypothetical that she used to support her finding that the claimant could still perform her past relevant work included the non-exertional limitation from the prior hypothetical of frequent reaching in all other directions in addition to the limitation to no overhead reaching."). The ALJ's third hypothetical was not ambiguous. Accordingly, the VE's testimony regarding this hypothetical individual is relevant to Ladonna S.'s ability to perform her past relevant work. The ALJ properly relied on this hypothetical and Ladonna S.'s argument to the contrary is therefore unavailing.

Ladonna S.'s second argument is that the ALJ failed to consider "the effect of the claimant's proliferative diabetic neuropathy, posterior vitreous detachment, and carpal tunnel syndrome on her ability to work, as required by SSR 96-8p." (ECF No. 15-1 at 9.) SSR 96-8p instructs, in relevant part:

3

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *5; *see also* 20 C.F.R. § 416.945(a)(2) (An ALJ "will consider all of [a claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe[.]'"); *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) ("To make this [RFC] assessment, the ALJ must 'consider all of the [the claimant's] medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two.") (quoting 20 C.F.R. § 416.945(a)(2)).

Ladonna S. argues that the ALJ failed to adequately consider the limitations caused by three impairments: proliferative diabetic neuropathy, posterior vitreous detachment, and carpal tunnel syndrome. As to the claimant's alleged proliferative diabetic neuropathy, the Court is unable to locate any evidence to support the claimant's argument that she has such a condition. Ladonna S. does not cite to any evidence in the record relevant to proliferative diabetic neuropathy and the Commissioner was, like the Court, unable to locate any such evidence. Accordingly, the Court concludes that the ALJ could not have erred by failing to adequately consider any limitation caused by this impairment. There is no evidence that Ladonna S. has this impairment.

As to Ladonna S.'s posterior vitreous detachment and carpal tunnel syndrome, the ALJ concluded that these were "non-severe impairments in that they caused no more than minimal vocationally relevant limitations. . . ." (Tr. 18.) The ALJ went on to discuss these impairments:

> In May 2013, the claimant reported to her primary care provider that she had a floater in her left eye field of vision. She was referred to an ophthalmologist. She was found to have posterior vitreous detachment. Her visual acuity without correction was 20/40. She was given a prescription for glasses in January 2015. A nerve conduction study on September 19, 2011 showed mild carpal tunnel syndrome. William Russell, M.D. noted that carpal tunnel syndrome did not correlate to the claimant's reported symptoms. These impairments are not severe because they did not cause more than minimal vocationally relevant [limitations].

(Tr. 19) (internal citations to record omitted).

Even though the ALJ determined that Ladonna S.'s posterior vitreous detachment and carpal tunnel syndrome were non-severe impairments, in that they did not cause more than minimal vocationally relevant limitations, because the ALJ also determined that she suffered severe impairments, the ALJ continued with the sequential evaluation process. Ladonna S. does not state what additional functional limitations should have been included in the RFC to account for her

posterior vitreous detachment and carpal tunnel syndrome. And a review of the evidence that Ladonna S. cites regarding these conditions does not cast light on what additional limitations the ALJ should have included in the RFC. The Court's task at this stage is to review the ALJ's decision to determine whether it is supported by substantial evidence and the correct application of the relevant legal standards. The Court has reviewed the record and concludes that the ALJ's opinion sufficiently explains how Ladonna S.'s non-severe impairments were considered, that the RFC determination is supported by substantial evidence, and that the ALJ complied with the appropriate standards in assessing Ladonna S.'s RFC. Accordingly, Ladonna S.'s second argument is also without merit.

For the reasons set forth herein, Ladonna S.'s Motion for Summary Judgment (ECF No. 15) will be **DENIED**, and the Commissioner's Motion for Summary Judgment (ECF No. 16) will be **GRANTED**. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

        Sincerely yours,

        /s/
        Timothy J. Sullivan
        United States Magistrate Judge